**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

THOMAS R. KOCHIS, and those similarly
situated,                                              Case No. 18-11455

       Plaintiff,                              Honorable Nancy G. Edmunds

v.

CITY OF WESTLAND

       Defendant.

_____/

**ORDER AND OPINION GRANTING IN PART**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [17]**

In this putative class action, Plaintiff Thomas R. Kochis challenges the
constitutionality of Defendant City of Westland's debris removal and nuisance ordinances.
Pending before the Court is Defendant's motion for summary judgment. (ECF No. 17.)
Plaintiff opposes the motion. On July 17, 2019, the Court held a hearing in connection
with the motion. For the reasons set forth below, the Court **GRANTS IN PART** and
**DENIES IN PART** Defendant's motion for summary judgment.

## I.     Background

Plaintiff Thomas Kochis is the owner of real property located in the City of
Westland. The property is located at 33512 Berville, Westland, MI 48185. The property
is not Plaintiff's primary residence; it is a rental property. The property is managed by
Garner Management & Associates.

In or around the early part of November 2017, Plaintiff's tenant moved out of the
property. The tenant left a pile of discarded household items, junk, garbage, and debris

on the side of the street.  The discarded items were located in a public right of way, but on Plaintiff's property.  According to Defendant, the abandoned items sat on Plaintiff's property for several weeks.

On November 13, 2017, Defendant sent Plaintiff a letter concerning the condition of his property.[1]  In the letter, Defendant informed Plaintiff that his property was in violation of Westland City Code § 83-2, which applies to abandoned personal property.  The letter informed Plaintiff that pursuant to City Code § 83-2, Plaintiff had 72 hours to remove the abandoned personal property from the premises.  The letter provided Plaintiff with a phone number and e-mail address to contact if he had any questions regarding the violation or the notice.  The letter did not specifically state that penalties would be assessed if Plaintiff failed to remove the property within 72 hours.  The letter also did not specifically state if or when Defendant would exercise its own remedial measures if Plaintiff did not act within 72 hours.

Plaintiff received the letter and forwarded it to his property manager.  On November 22, 2017, Defendant sent a contractor to remove the abandoned personal property and debris from Plaintiff's property.  Unbeknownst to Defendant, Plaintiff's property manager had simultaneously arranged for its own contractor to dispose of the abandoned personal property.  However, Defendant's contractor reached the property first and removed the abandoned personal property.

In his affidavit, Plaintiff states he did not receive the letter from Defendant until after the 72-hour deadline had expired.  Defendant does not contest this statement.  But as Defendant notes, there is no dispute Plaintiff received the letter and that Plaintiff's

---

[1] It is not clear from the summary judgment record how the letter was transmitted to Plaintiff.

property manager was preparing to act on the violation on or before November 22, 2017. There is also no dispute that neither Plaintiff nor his property manager contacted or attempted to contact Defendant, took steps to investigate the violation, or made any inquiries into the status of the property clean up.

The items picked up by Defendant's contractor were photographed, but not weighed or measured. On November 24, 2017, Defendant sent Plaintiff an invoice in the amount of $1009.00 for "lot clean up with debris removal for 33512 Berville." The invoice contained a due date of December 28, 2018. Defendant incurred $449.00 in actual costs to remove the abandoned personal property from Plaintiff's lawn, and Defendant concedes that the amount of the invoice exceeds the amount it directly paid to its vendor for the removal. In addition to the cost of removing the abandoned personal property from Plaintiff's property, Defendant claims it also incurred costs associated with disposing of the debris, which is reflected in a separate invoice. The total of that invoice is $2450.00, and according to Defendant, an unspecified portion of that invoice is attributable to Plaintiff's violation. Defendant states the remaining amounts of the $1009 invoice represent internal administrative costs, but Defendant provides no detail or explanation of how these amounts were calculated or how it reached the $1009 figure.[2]

Neither the invoice issued to Plaintiff nor Chapter 83 of the City Code sets forth a process for a property owner to formally dispute a violation or an invoice charge for removal of abandoned personal property. The invoice only provides a contact phone number for the Westland Department of Neighborhood Services. On December 07, 2017, Plaintiff's property manager contacted Defendant to obtain information about the charges.

---

[2] At the hearing, Defendant stated it has no idea how it calculated the $1009 charge to Plaintiff and argued that it was Plaintiff's burden to explain the basis of Defendant's calculations and charges.

Initially, Defendant refused to provide any information without a Freedom of Information Act request, but eventually acquiesced to Plaintiff's informal request. It is unclear from the documentary record whether Plaintiff attempted to dispute the charges, or just sought additional information from Defendant. However, in Plaintiff's affidavit, he states that he wanted to dispute the charges but that there was no process for him to do so.

Plaintiff did not pay the invoice by its due date. In accordance with Westland City Code § 83-5, the unpaid invoice was placed on Plaintiff's property tax bill for 2018. According to Defendant, the invoice was ultimately paid by Plaintiff's mortgagee escrow account on or about August 15, 2018.

On May 08, 2018, Plaintiff initiated this putative class action. Although Plaintiff's violation arose under Westland City Code Chapter 83 and the basis for the charges assessed to Plaintiff appears to arise under § 83-5, in his complaint, Plaintiff challenges the constitutionality of two different parts of the City Code: Chapters 22 and 42. Chapter 22 of the City Code formally adopts the International Property Maintenance Code with certain amendments to the IPMC's noxious weed removal provisions. Chapter 42 of the City Code authorizes the removal of nuisances from real property under certain conditions and the charging of fees for the costs of removal. Plaintiff refers to these two chapters as the Weeds Ordinance and the Nuisance Ordinance, respectively.[3]

---

[3] At the hearing, Plaintiff stated that even though his violation arose under Chapter 83, his claims challenge Chapter 42 because this is the Code provision that purportedly enables Defendant to charge and invoice property owners for violations of Chapter 83. Defendant agreed with Plaintiff's interpretation of its Code. But neither party could explain how this interpretation was supported by the plain text of the Code. Chapter 83 does not reference Chapter 42, and Chapter42 does not reference Chapter 83. Moreover, § 83-5 expressly authorizes Defendant to invoice property owners for expenses incurred in abating violations of that chapter and permits Defendant to place a lien on the property if an owner fails to pay an invoice.

In counts one and three of his complaint, Plaintiff asserts the Weeds and Nuisance Ordinances violate the due process rights of Plaintiff and all other property owners because the ordinances do not provide adequate pre-deprivation and post-deprivation remedies to owners found to be in violation. In count two, Plaintiff claims the fees charged by Defendant under the Weeds and Nuisance Ordinances, which are sometimes double the actual expenses incurred by Defendant, violate the Eighth Amendment. In counts four and five, Plaintiff asserts claims for unjust enrichment, restitution, and assumpsit based on Defendant's allegedly unjust and unlawful collection of fees under the Weeds and Nuisance Ordinances. Finally, in Count Six, Plaintiff alleges violations of Article 9, Section 31 of the Michigan Constitution and asserts that the fees charged by Defendant are really an unapproved tax on property owners. Plaintiff seeks to recover damages allegedly caused by Defendant's constitutional violations, and specifically seeks to recover all amounts paid to Defendant under its Weeds and Nuisance Ordinances. Plaintiff also asks the Court to declare that all liens placed on properties under the Weeds and Nuisance Ordinances are invalid.

On January 21, 2019, Plaintiff filed his motion for class certification. (ECF No. 13.) The Court permitted Defendant to file a motion for summary judgment prior to responding to Plaintiff's class certification motion to resolve certain threshold issues. On May 10, 2019, Defendant filed its motion for summary judgment, which is now before the Court.

## II. Summary Judgment Standard

"Summary judgment is proper only if the moving party shows that the record does not reveal a 'genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Benison v. Ross*, 765 F.3d 649, 658 (6th Cir. 2014) (quoting FED. R.

CIV. P. 56(a)).  A genuine issue of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)).

In addition, once the moving party has met its burden, the non-moving party must make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Bormuth v. Cty. of Jackson*, 870 F.3d 494, 503 (6th Cir. 2017).  The non-moving party must present some evidence in support of its complaint to defeat a motion for summary judgment and show that a genuine issue for trial exists—i.e., that a reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 248.

## III. Analysis

### A. Plaintiff's standing to challenge the Weeds Ordinance.

Defendant argues Plaintiff lacks standing to raise a due process challenge to the Weeds Ordinance because Plaintiff was never charged fees for the abatement of noxious weeds and therefore does not have an actual injury in connection with that ordinance. Without citing to any authority, Plaintiff contends it has standing because the statute for assessing abatement charges against an owner for both debris and weeds is the same, and therefore Plaintiff has standing as class representative to challenge all charges improperly levied under that ordinance.

The Court agrees with Defendant that Plaintiff lacks standing to assert violations of the Weeds Ordinance under the facts and circumstances presented here. Plaintiff's complaint does not seek a declaration that the Weeds Ordinance is facially unconstitutional.[4] And Plaintiff presents no evidence indicating he suffered any injuries under the Weeds Ordinance. Plaintiff's violation arose under City Code § 83-2. The only apparent connection between the Weeds Ordinance and Chapter 83 is that a violation of Chapter 83 may also be a violation of Chapter 22, which contains the Weeds Ordinance. There does not appear to be any other connection between Chapter 83 and the Weeds Ordinance. To the extent Plaintiff's claims are based on the Weeds Ordinance they are dismissed.

**B. Plaintiff's due process claims.**

In count one of the complaint, Plaintiff alleges the Weeds and Nuisance Ordinances violate his due process rights under the Fifth Amendment because they enable Defendant to charge property owners fees without adequate pre-deprivation or post-deprivation procedures. Plaintiff also claims Defendant "violates the rights of Plaintiff and others similarly situated by charging fees that are hundreds of thousands of dollars greater than the expense paid by the City." In count three, Plaintiff alleges the Weeds and Nuisance Ordinances violate the Fourteenth Amendment because the Michigan Constitution provides a right of appeal from a final order of an administrative body, but the fees charged by Defendant under the Weeds and Nuisance Ordinances are not

---

[4] Plaintiff's request for declaratory relief (Count Eight) only seeks a declaration that liens placed on properties pursuant to the Weeds and Nuisance Ordinances are invalid. But there is no lien on Plaintiff's property that resulted from either the Weeds Ordinance or the Nuisance Ordinance.

appealable because they are not final orders as contemplated by the Michigan Constitution.

In moving for summary judgment, Defendant argues that Plaintiff cannot establish his due process rights were violated as alleged in the complaint and therefore Plaintiff's claims fail as a matter of law. Plaintiff's complaint, however, is not clear on several points which presents some challenges in addressing Defendant's motion for summary judgment. For one, Plaintiff does not specify whether his claims are based on substantive or procedural due process violations. Second, Plaintiff's claims appear to not be pled under the proper constitutional authority. Count one states it is based on Defendant's alleged violations of the Fifth Amendment's due process clause. Count three states it is based on Defendant's alleged violations of the Fourteenth Amendment, but only alleges violations of the Michigan Constitution. The Fifth Amendment, however, is only applicable to the federal government—the Fourteenth Amendment applies to state violations of federal due process rights. *See Myers v. Vill. of Alger, Ohio*, 102 F. App'x 931, 933 (6th Cir. 2004) ("[T]he Myerses's reliance upon the Fifth Amendment is misplaced because the Fifth amendment applies to the federal government, not state or local governments such as the Village."). Finally, Plaintiff does not make a single allegation concerning Chapter 83—the ordinance that Plaintiff was found to have violated. Notwithstanding these issues, the Court will consider the merits of Plaintiff's claims as both procedural and substantive due process violations, will assume that Plaintiff intended to assert violations of the Fourteenth Amendment by Defendant, and will assume Plaintiff is asserting that his due process rights were violated by Defendant's enforcement of Chapter 83 along with the Weeds and Nuisance Ordinances.

1.  **Procedural due process**

In considering procedural due process claims, the Court first determines whether the alleged deprivation is within the ambit of the Fourteenth Amendment's protection of liberty and property. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999). This analysis is simple here because Defendant acknowledges that Plaintiff possessed a protected property interest in the $1009 fee charged by Defendant.

The Court must next determine whether Defendant afforded adequate notice and process prior to and following the deprivation of Plaintiff's property. As the Sixth Circuit explained in *Shoemaker v. City of Howell*, 795 F.3d 553, 558-59 (6th Cir. 2015), at its essence, due process can be summarized as "the requirement that a person ... be given notice of the case against him and [an] opportunity to meet it." *Mathews v. Eldridge*, 424 U.S. 319, 348-49 (1976) (internal quotation marks and alteration omitted). Under *Mathews,* courts are instructed to weigh several factors in deciding exactly how much process is due:

> [1] the private interest that will be affected by the official action; [2] the risk of an erroneous deprivation[;] ... [3] the probable value, if any, of additional or substitute procedural safeguards; and [4] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335 (citing *Goldberg v. Kelly,* 397 U.S. 254, 263-71 (1970)). The requirements of due process are fluid and fact dependent. *Shoemaker*, 795 F.3d at 559. In addition, pre- and post-deprivation processes are generally considered together as a single package:

> The predeprivation process need not always be elaborate, however; the amount of process required depends, in part, on the importance of the interests at stake.... Moreover, the sufficiency of predeprivation procedures must be considered in conjunction with the options for postdeprivation review; if elaborate procedures for postdeprivation review are in place, less elaborate predeprivation process may be required. In some cases,

postdeprivation review may possibly be sufficient, and no predeprivation process is required.

*Id.* (quoting *Leary v. Daeschner*, 228 F.3d 729, 742-43 (6th Cir. 2000)).

Here, Defendant argues Plaintiff's due process claim fails because Plaintiff was afforded adequate notice of his violation and sufficient procedures for contesting the charges. It is undisputed that Defendant provided a single notice of the violation to Plaintiff. Defendant contends this single letter was sufficient under the facts and circumstances presented here. Plaintiff responds that Defendant's single notice was not sufficient, particularly when the notice did not contain all the information allegedly required by Defendant's own ordinances or inform Plaintiff of the potential consequences of failing to timely comply.

To satisfy due process under the Constitution, the notice must be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," and "must afford a reasonable time for those interested to make their appearance." *Shoemaker*, 795 F.3d at 560 (quoting *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 314 (1950)). Both parties point to the Sixth Circuit's opinion in *Shoemaker* to support their interpretation of Defendant's notice.

*Shoemaker* involved a violation of a noxious weed ordinance like Defendant's Weeds Ordinance here. In *Shoemaker*, a property owner was charged $600 by the City of Howell for the costs of mowing the property owner's lawn. *Id.* at 561. Reversing the decision of the district court, the Sixth Circuit held the City of Howell's failure to notify the homeowner of his ability to challenge a city-ordinance violation did not violate the due process clause. *Id.* at 560-61. The Court found that the repeated notices to the

homeowner, which cited the relevant city ordinance and gave the phone number for Howell's city hall, provided enough information for the plaintiff to investigate his procedural remedies. *Id.* And because "[a] simple investigation of the referred-to Ordinances or a call to City Hall would have answered Shoemaker's questions," the panel found that the plaintiff's ignorance of available procedural remedies was due to his own lack of diligence. *Id. See also Peterson v. City of Grand Rapids*, No. 1:15-CV-671, 2016 WL 4136523, at *8 (W.D. Mich. Aug. 4, 2016) (finding that single notice of a nuisance code violation received by the plaintiffs, which was similar in content to the notice received by Plaintiff here and the notices sent in *Shoemaker*, satisfied procedural due process concerns).

Defendant contends its single notice was adequate because it contained the same basic information as provided by the notices in *Shoemaker.* Plaintiff responds that the single notice is not sufficient and distinguishes *Shoemaker* where there were multiple notices containing substantially more information than Defendant's single notice.

Here, as in *Shoemaker*, there is no dispute Plaintiff received the notice and was aware that Defendant considered him to be in violation of § 83-2. Also, as in *Shoemaker*, the notice included the phone number and e-mail address of Defendant's Neighborhood Department. The summary judgment record reflects that Plaintiff's property manager recognized the property was in violation of the City Code after receiving the notice and began to take steps to resolve the violation. But neither Plaintiff, nor his property manager, ever contacted Defendant to ask for additional time to remediate the violation. Nor did they take any steps to investigate the violation, the referenced code provision, or their potential remedies.

Unlike in *Shoemaker*, however, the summary judgment record is not clear that the notice provided Plaintiff with enough information for him to investigate his procedural remedies or the potential consequences of his violation. The notice informed Plaintiff that the condition of his property violated § 83-2 of the City Code, but Defendant stated at the hearing that Chapter 42 is the true source of its power to abate Plaintiff's violation and to invoice Plaintiff for its expenses. Chapter 83 does not reference Chapter 42. Chapter 83 also does not reference any of the other appeal provisions or potential remedies identified by Defendant, like those contained in the International Property Maintenance Code. Thus, unlike in *Shoemaker*, here, Defendant has not established as a matter of law that Plaintiff could have learned about the procedures for objecting to the allegations against him or about the potential penalties associated with his violation from the face of the notice. In addition, unlike in *Shoemaker*, where the property owner received multiple notices over a sixth month period, Plaintiff was sent a single notice. And Plaintiff claims he received the notice after the deadline for compliance set by the notice. Under the facts and circumstances presented here, Defendant has failed to establish that there are no genuine issues of material fact as to whether Plaintiff was afforded sufficient notice of his violation before the deprivation of his property.

With respect to the procedural considerations, both parties also contend that *Shoemaker* is instructive. In *Shoemaker,* the Sixth Circuit held that the City of Howell's remedial procedures were adequate under the facts and circumstances presented there. *Id.* at 563. Reversing the decision of the district court, the Sixth Circuit found that the plaintiff's property interest—$600 in fines and fees over a sixteen-month period—was "relatively minor." *Id.* at 561. The Court concluded the risk of erroneous deprivation of

property was low because grass height is an "objective, readily ascertainable standard." *Id.* And the court determined that additional process would have added little value since Michigan law allowed for a hearing and for review in the state's circuit court. *Id.* at 562. Lastly, the Court found that the costs of additional process would exceed the city's revenue from the fines in question. *Id.*

Defendant argues that like in *Shoemaker*, the $1009.00 charge here was relatively minor, there is little risk of erroneous deprivation of property by the Weeds and Nuisance Ordinances, and that additional processes would add little value while burdening the city. Defendant also argues that additional processes are unnecessary because there are available procedures for challenging a fine or invoice issued under the City Code, such as calling to dispute a violation or charge, appearing at a city council meeting, or exercising the appeal procedures established by the PMC. Plaintiff responds that these informal procedures are inadequate and that no formal procedures exist to challenge the validity of an invoice or lien. Plaintiff also claims that the fees are not reviewable by a state circuit court under Article VI, § 28 of the Michigan Constitution because they are not the result of a final order.

Based on the record before the Court, the Court finds Defendant has not satisfied its summary judgment burden to establish that there are no genuine issues of material fact as to whether adequate procedures were afforded to Plaintiff. The Court agrees with Plaintiff that a $1009 invoice should not automatically be characterized as minor. And while there does not really appear to be any question that Plaintiff was in violation of the City Code, that Defendant apparently has no idea where the additional $660 charged to Plaintiff above the $449 in actual expenses came from suggests there may in fact be

some risks of erroneous or at least arbitrary deprivation of property. Similarly, the Court finds that genuine issues of fact exist as to whether adequate dispute procedures were afforded to Plaintiff. This includes questions about whether the appeal procedures established by Article VI, § 28 of the Michigan Constitution were available to Plaintiff under the facts and circumstances presented here.

To be clear, the Court's opinion should not be construed as finding that Plaintiff's due process rights were in fact violated. Rather, Defendant has simply failed to establish that there are no genuine issues of material fact concerning whether Plaintiff was afforded adequate notice or that there were adequate and available procedures or a dispute process available to Plaintiff in connection with his November 2017 violation. Accordingly, Defendant's motion for summary judgment on counts one and three is denied because Defendant failed to establish that there are no genuine issues of material fact as to whether Plaintiff's procedural due process rights were violated.

Plaintiff has not established, however, let alone adequately stated a claim for relief, that either Chapter 83 or the Nuisance Ordinance is facially unconstitutional. Therefore, to the extent Plaintiff seeks a declaration invalidating Chapter 83 or the Nuisance Ordinance as facially unconstitutional, Defendant's motion for summary judgment is granted.

## 2. Substantive due process

The Sixth Circuit has referred to substantive due process as "[t]he doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed." *Shoemaker*, 795 F.3d at 564 (quoting *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992) (internal quotation

marks omitted)). The scope of limitations the Constitution imposes on such governmental deprivations depends on the nature of the right being deprived. *Id.* Specifically, "[g]overnment actions that do not affect fundamental rights ... will be upheld if [ ] they are rationally related to a legitimate state interest." *Id.* (quoting *Seal v. Morgan*, 229 F.3d 567, 575 (6th Cir. 2000)). When government actions do impact an individual's fundamental rights, however, the courts will apply the rigorous strict-scrutiny standard to the alleged deprivation. *Id.* (citing *Reno v. Flores*, 507 U.S. 292, 301-02 (1993)).

The Sixth Circuit has summarized the existing fundamental rights as "those protected by specific constitutional guarantees, such as the Equal Protection Clause, freedom from government actions that 'shock the conscience,' and certain interests that the Supreme Court has found so rooted in the traditions and conscience of our people as to be fundamental." *Id.* at 566 (quoting *Bell v. Ohio State Univ.*, 351 F.3d 240, 250 (6th Cir. 2003) (internal citation omitted)). In *Shoemaker*, the Sixth Circuit held that the City of Howell's ordinance did not impair a fundamental right and, therefore, rational-basis review was the proper standard. *See id.* The same conclusion is appropriate here.

Where an ordinance "does not proscribe fundamental liberties," it may "nonetheless violate the Due Process Clause where it imposes burdens without any rational basis for doing so." *Id.* at 567 (quoting *Sheffield v. City of Fort Thomas*, 620 F.3d 596, 613 (6th Cir. 2010)). "This standard is highly deferential; courts hold statutes unconstitutional under this standard of review only in rare or exceptional circumstances." *Id.* (quoting *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 501 (6th Cir. 2007)). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it is so unrelated to the achievement of any combination of legitimate purposes that the court

can only conclude that the government's actions were irrational." *Id.* (quoting *Michael v. Ghee*, 498 F.3d 372, 379 (6th Cir. 2007)).   "[T]he burden is on [the plaintiff] to show that there is no rational connection between the enactment and a legitimate government interest." *Id.* (quoting *Sheffield*, 620 F.3d at 613).

In *Rowe v. City of Elyria*, 38 Fed. Appx. 277, 282 (6th Cir. 2002), the Sixth Circuit examined an ordinance like the one at issue here under rational-basis review.   There, the Court upheld the grass-mowing ordinance before it because it was rationally related to the City of Elyria's "legitimate governmental purposes relating to aesthetics and vermin control." *Id.*   The Sixth Circuit reached the same conclusion in *Shoemaker*. 795 F.3d at 566-67.

Here, Defendant similarly defends the Weeds and Nuisance Ordinances by arguing that they advance several legitimate interests, including preserving and maintaining property values, the aesthetics of the community, and the health, safety and welfare of the public.   These interests have been recognized as legitimate government interests in other contexts. *See, e.g., Berman v. Parker*, 348 U.S. 26, 33 (1954) ("It is within the power of the legislature to determine that the community should be beautiful"); *H.D.V.—Greektown, LLC v. City of Detroit*, 568 F.3d 609, 623 (6th Cir. 2009) (holding that safety and aesthetics are legitimate governmental interests); *Harris v. Akron Dept. of Public Health*, 10 Fed. Appx. 316, 319 (6th Cir. 2001) (identifying property values, aesthetics, and the health, safety, and welfare of the public as legitimate governmental interests).

Because no fundamental right is implicated by Defendant's blight abatement requirements as contained in Chapter 83, the Weeds Ordinance, and the Nuisance

Ordinance, and because those ordinances are rationally related to legitimate governmental purposes, the ordinances do not violate Plaintiff's substantive due process rights. Defendant's motion for summary judgment is granted as to Plaintiff's substantive due process claims, if any.

**C. Plaintiff's Eighth Amendment claim.**

In its complaint, Plaintiff alleges the fees charged by Defendant under its Weeds and Nuisance Ordinances, including the fees charged to Plaintiff for his violation of Chapter 83, violate the Eighth Amendment. Plaintiff complains the fees are excessive and are not related to the actual expenses incurred by Defendant in remediating violations of the City Code. Defendant moves for summary judgment on this claim, arguing that: (1) the fees assessed under the Weeds and Nuisance Ordinances are not punishments, and therefore do not fall within the purview of the Eighth Amendment; and (2) even if the fees are punishments, the are generally not excessive.

The Court agrees with Defendant that the fees and expenses permitted under its Weeds and Nuisance Ordinances do not implicate the Eighth Amendment. The Court also finds that the fees and expenses provided for in Chapter 83 do not implicate the Eighth Amendment. On their face, the fees are not punitive or excessive. *See Discount Inn, Inc. v. City of Chicago*, 803 F.3d 317, 321 (7th Cir. 2015). Therefore, Defendant's motion for summary judgment is granted to the extent it seeks to invalidate any of the ordinances on their face.

Plaintiff also challenges the $1009.00 fee specifically assessed to him as an excessive fine under the Eighth Amendment. The summary judgment record reflects that the costs of abatement of the violation was $449.00. While it is possible that the additional

costs were rationally related to the total expenses incurred by Defendant in remediating Plaintiff's violation, or are otherwise lawful, Defendant has not produced sufficient evidence at this time to support that position. Accordingly, Defendant's motion for summary judgment as to Plaintiff's alleged Eighth Amendment violation is denied without prejudice.

### D. Plaintiff's equal-protection claim.

Plaintiff concedes he has no claim for alleged equal-protection violations. Accordingly, Defendant's motion is granted as to this count.

### E. Plaintiff's claim for violation of the Headlee Amendment to the Michigan Constitution.

Plaintiff claims the fee levied against him is an impermissible tax under Michigan's Headlee Amendment. Under this provision, the levying of a new tax without voter approval violates the Headlee Amendment. *See Jackson Co. v. City of Jackson*, 302 Mich. App. 90, 99; 836 NW2d 903 (2013). But, as Defendant points out, a charge that is a user fee as opposed to a tax is not subject to the Headlee Amendment. *Id.*; *Wheeler v. Twp. of Shelby*, 265 Mich. App. 657,664; 697 NW2d 180 (2005).

"There is no bright-line test for distinguishing between a valid user fee and a tax that violates the Headlee Amendment." *Bolt v. Lansing*, 459 Mich. 152,160; 587 NW2d 264 (1998). In general, "a fee is exchanged for a service rendered or a benefit conferred, and some reasonable relationship exists between the amount of the fee and the value of the service or benefit. *Id.* at 161. A tax, on the other hand, is designed to raise revenue." *Id.*

Here, Plaintiff has not established that the fees issued by Defendant under its ordinances are taxes designed to raise revenue for Defendant. Defendant is entitled to summary judgment on this claim.

**F. Plaintiff's claims for unjust enrichment, restitution, and assumpsit.**

In his complaint, Plaintiff seeks monetary relief in the form of "unjust enrichment, restitution, and/or assumpsit" for the fees Defendant collected under its allegedly unconstitutional ordinances. Plaintiff argues he is entitled to compensation under assumpsit or theories of unjust enrichment and restitution because Defendant allegedly charged and recouped fees under an unlawful ordinance. Plaintiff has failed to establish its entitlement to damages under any of these claims.

As an initial matter, the ordinances challenged by Plaintiff are not on their face unlawful. Furthermore, while Plaintiff is correct that the substantive remedies available under assumpsit were preserved by the Michigan Supreme Court in *Fisher Sand & Gravel Co. v Neal A. Sweebe, Inc.*, 494 Mich. 543, 564, 837 N.W. 2d 244, 256 (2013)*, Plaintiff does not identify the scope of those substantive remedies or how the remedies apply here, other than in the form of its unjust enrichment claim.

To sustain a claim of unjust enrichment under Michigan law, a plaintiff must establish (1) the receipt of a benefit by the defendant from the plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant. *Barber v. SMH (US), Inc.*, 202 Mich. App. 366, 375, 509 N.W.2d 791 (Mich. Ct. App. 1993). But Plaintiff fails to establish these elements. Plaintiff has not presented any evidence of a benefit conferred on Defendant. Plaintiff similarly fails to present evidence of an inequity resulting from the fees charged by Defendant under its ordinances. Defendant is permitted to

charge fees for violations of Chapter 83, the Weeds Ordinance, and the Nuisance Ordinance. Defendant is entitled to summary judgment on Plaintiff's claims for unjust enrichment, restitution, and/or assumpsit.

### G. Statute of limitations.

Defendant seeks to limit the scope of potentially recoverable damages based on the statute of limitations. The relevant statutes of limitations here would be three years for his constitutional claims and six years for his unjust enrichment claim. Plaintiff responds that the availability of damages is not ripe for consideration.

There is no evidence that Plaintiff's specific claims will be impacted by the statute of limitations. Thus, this portion of Defendant's motion appears to be challenging the scope of damages recoverable by the putative class members. But no class has been certified at this time, and it would be premature for the Court to make determinations about the timeliness of claims that may never be before the Court. Accordingly, this potion of Defendant's motion is denied without prejudice. Defendant may re-urge this argument in connection with class certification proceedings, if any.

### IV. Plaintiff's motion for class certification.

In Plaintiff's pending motion for class certification, Plaintiff seeks certification of the following class:

> All persons and entities who have been charged/levied Fees by the City under Section 22-132 of the Property Maintenance Code and Section 42-72 and 42-73 of the Environment Ordinance from June 2012 through final judgment in this matter, or such longer period as may be allowed by law.

Plaintiff's proposed class is no longer viable considering the Court's rulings on Defendant's motion for summary judgment. As a result, Plaintiff's motion for class certification is dismissed as moot.

## V.     Conclusion

For the reasons set forth above, Defendant's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff's motion for class certification is dismissed as moot.

**SO ORDERED.**

<u>s/Nancy G. Edmunds</u>
Nancy G. Edmunds
United States District Judge

Dated:  August 13, 2019

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 13, 2019, by electronic and/or ordinary mail.

<u>s/Lisa Bartlett</u>
Case Manager